IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DEANNA W.[1]**, | Case No. 2:20-cv-1916-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Katherine B. Watson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Deanna W. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI on May 16, 2017, alleging disability beginning on May 16, 2017. AR 301. Plaintiff's date of birth is December 27, 1971, and she was 45 years old as of the

alleged disability onset date. AR 302. The agency denied her claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 330, 336, 342. Plaintiff appeared for a hearing before an ALJ in August 2019. AR 47. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 26-41. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. *Id.* § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. *Id.* § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? *Id.* § 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* § 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. *Id.* § 416.909. If the claimant does not have a severe impairment, the analysis ends. *Id.* § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

> 3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. *Id.* § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. *Id.* §§ 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.
>
> 4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. *Id.* § 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national

PAGE 4 – OPINION AND ORDER

economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis as noted above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2017. AR 29. At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of degenerative joint disease of the left ankle, obesity, irritable bowel syndrome, depression, and neurodevelopmental disorder. AR 30. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 31.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> sedentary work as defined in 20 CFR 416.967(a) except the claimant could sit for up to eight hours per day, but could stand or walk up to two hours but no more than two hours of either standing or walking. She would never climb ramps and stairs as part of the employment, nor would she climb ladders, ropes, or scaffolds. With either a ramp or stair, for the purpose of entering and exiting the workplace, could be done incidentally, but it would not be required to repeatedly climb ramps and stairs as part of the job. Balance would be never, she could occasionally stoop or kneel, but never crouch or crawl. She would never be exposed to unprotected heights, moving mechanical parts, or operating a motor vehicle as part of the employment. She would be limited to reaching overhead at the occasional level bilaterally. She is limited to performing simple, routine, repetitive tasks, but not at a production rate, i.e. fast paced assembly line type work. She is limited to simple work related decisions, utilizing judgment, or dealing with changes in the work setting. She could be off task, but no more than ten percent of an eight-hour workday, and could be absent from work for medically related reasons no more than one day a month. She would need a bathroom facility within the work environment.

AR 33. At step four, the ALJ concluded Plaintiff has no past relevant work. AR 39. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff

could perform jobs that exist in significant numbers in the national economy. AR 40. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

As a threshold matter, Plaintiff argues that the statute of limitations for filing her civil complaint should be equitably tolled. The Commissioner does not dispute this issue. *See* ECF 21, at 3 n.1. Thus, the Court treats Plaintiff's complaint as timely. On the merits, Plaintiff argues the ALJ erred by discounting Plaintiff's symptom testimony, failing to discuss the lay witness testimony of Plaintiff's sister, failing to develop the record, and, in turn, without the benefit of additional evidence, erroneously rejecting the medical opinions of Drs. Anthony Hinz and John Allen. The Court addresses each argument in turn.

### A. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1. Work History

Conflict between a plaintiff's work history and symptom testimony is a clear and convincing reason to discount a plaintiff's testimony. *Camarena v. Kijakazi*, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021) ("Camarena's work history contradicted her testimony regarding her physical limitations and provided a non-arbitrary ground on which the ALJ could discredit her testimony." (citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)).

Although Plaintiff's work history did not raise to the level of gainful employment, the ALJ found that the level of activity in carrying out her prior work conflicted with her testimony. For a period of six months after her alleged onset date and ending one month before the hearing, Plaintiff worked as a babysitter for a group of five children between the ages of two and eleven. AR 62. Plaintiff worked from approximately 11:00 a.m. to 5:30 p.m. when the children's mother was at work. AR 67. Plaintiff described these children as "active" to a medical provider. *See* AR 1456. Further, Plaintiff stated at the hearing that she quit her babysitting job approximately one month before the hearing because her employer was "not paying [Plaintiff] like she was supposed to." AR 62. Plaintiff did not state that her symptoms caused her to quit, though she did tell a medical provider that after a full day of babysitting, she felt pain in her left ankle. *See* AR 1456.

Substantial evidence supports the ALJ's conclusion that Plaintiff's work history conflicts with her symptom testimony. Plaintiff testified that the difficulty she experiences when climbing stairs, inability to sit for very long, inability to stand or walk for long periods of time, loss of strength in her arms, and poor memory, among other impairments, prevent her from working. Combined with Plaintiff's statement that she only quit her job because of the pay and not due to her impairments, the ALJ rationally concluded that caring for five children under the age of eleven for over six hours per day conflicted with these alleged disabling symptoms. *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Plaintiff's work history was therefore a clear and convincing reason supported by substantial evidence to discount Plaintiff's testimony.

### 2. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Plaintiff stated that due to her ankle pain, "she can't do stairs much at all." AR 63. Plaintiff also testified, however, that she lives in an upstairs apartment and walks down the stairs to the ground floor each time she does laundry. AR 68. Further, a medical provider concluded that based on Plaintiff's reported daily activities, that her activity level was "active." AR 1457. Although Plaintiff did testify that she is trying to move to a ground floor apartment so that she does not have to climb stairs, the ALJ rationally concluded that her ability to climb stairs on a regular basis conflicted with her symptom testimony that her ankle prevented her from climbing stairs. Thus, the ALJ's interpretation must be upheld. *See Burch*, 400 F.3d at 679. Plaintiff's activities of daily living was a clear and convincing reason supported by substantial evidence to discount Plaintiff's testimony.

### 3. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533

F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

Substantial evidence supports the ALJ's conclusion that Plaintiff sought conservative treatment. Plaintiff testified that she had not pursued any mental health treatment after the alleged onset date and had not sought out any medication for her alleged mental impairments. AR 74-75. Plaintiff also testified that the only medication she takes for her leg and ankle pain is over-the-counter pain medication such as ibuprofen. AR 75. Treatment with over-the-counter medication constitutes conservative treatment. *See Parra*, 481 F.3d at 750-51 (stating that the ALJ did not err by discounting the plaintiff's testimony based on the plaintiff's treatment with over-the-counter pain medication). Further, based on a review of the record and Plaintiff's evidence submitted to the Appeals Council, Plaintiff sought minimal treatment related to her ankle pain such as obtaining an ankle brace. *See, e.g.*, AR 1456; ECF 20-2, at 295. Plaintiff's conservative treatment was therefore a clear and convincing reason supported by substantial evidence to reject Plaintiff's testimony.

The ALJ therefore did not err by discounting Plaintiff's symptom testimony. Because Plaintiff's work history, activities of daily living, and conservative treatment are clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony, the Court need not address the Commissioner's argument that the objective medical evidence provides an additional basis to discount Plaintiff's testimony. *See Batson*, 359 F.3d at 1197 (upholding the

ALJ's rejection of the plaintiff's testimony because some, though not all, of the ALJ's reasons were valid).

## B.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant,

and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff argues that the ALJ erred by failing to discuss the lay witness testimony of Plaintiff's sister. The Commissioner argues that because Plaintiff's sister testified to no greater limitations than Plaintiff, any error in failing to discuss Plaintiff's sister's testimony was harmless. The Court agrees. Because the Court finds the ALJ did not err in evaluating Plaintiff's symptom testimony, any error in failing to discuss Plaintiff's sister's testimony is harmless. *See Molina*, 674 F.3d at 1117-18.

## C. Duty to Develop the Record and Medical Opinions of Drs. Hinz and Allen

Although the plaintiff is ultimately responsible for providing sufficient medical evidence of a disabling impairment, "the ALJ has a special duty to develop the record fully and fairly and ensure that the claimant's interests are considered." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). This duty is heightened when the plaintiff is unrepresented or represented by a non-attorney. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record is triggered when the record is ambiguous or inadequate. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The ALJ may develop the record by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues that the ALJ should have sought out treatment notes from Drs. Hinz and Allen because the record contains medical opinions from Drs. Hinz and Allen but none of their treatment notes. Plaintiff also argues that her references to Drs. Hinz and Allen during the hearing should have alerted the ALJ to the existence of their treatment notes. Plaintiff was represented by a non-attorney at the time of the hearing but later retained counsel after the ALJ issued its decision. *See* ECF 20-2, at 1. Plaintiff's counsel sent additional evidence, including Drs. Hinz and Allen's treatment notes, to the Appeals Council, but the Appeal Council denied Plaintiff's request for reopening based on that new evidence. *See* AR 1; ECF 20-2. Plaintiff argues that Drs. Hinz and Allen's treatment notes, which the ALJ should have sought out, undermine the ALJ's reasoning for discounting their opinions.

Because Plaintiff was not represented by an attorney at the time of the hearing, the ALJ had a heightened duty to develop the record. *See Tonapetyan*, 242 F.3d at 1150. The Court concludes, however, that even if the ALJ erred by failing to develop the record, any error was harmless. *See Walls v. Astrue*, 282 F. App'x 568, 571-72 (9th Cir. 2008) (concluding that any error in failing to develop the record was harmless error); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that legal error in failing to develop the record is subject to the traditional harmless error analysis). Here, the Court has the benefit of the evidence Plaintiff contends that the ALJ should have considered because Plaintiff's counsel submitted that evidence to the Appeals Council. *See* ECF 20-2, at 1. Based on the Court's review, this new evidence does not undermine the substantial evidence supporting the ALJ's decision.

As for Dr. Hinz, the ALJ found Dr. Hinz's opinion somewhat persuasive because it failed to identify specific limitations. The additional evidence Plaintiff submits, including Dr. Hinz's

PAGE 14 – OPINION AND ORDER

treatment notes, do not undermine this conclusion. Dr. Hinz opined that Plaintiff has "ankle instability," is "severely limited in her overall mobility," is "not able to maintain gainful employment in a laboring position," and has "significant physical disability and limitations." AR 1444. The ALJ incorporated Dr. Hinz's opinion that Plaintiff has ankle instability into Plaintiff's RFC. *See* AR 33, 39. Dr. Hinz's other opinions, however, do not identify specific limitations and instead broadly conclude that Plaintiff is disabled, which is a question reserved for the Commissioner. *See* 20 C.F.R. § 416.920b(c)(3). Thus, Dr. Hinz's treatment notes and the other new evidence that Plaintiff submitted do not undermine the substantial evidence supporting the ALJ's finding that Dr. Hinz's medical opinion was somewhat persuasive. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (concluding that the ALJ did not err by failing to discuss a medical opinion that did not identify specific limitations and otherwise did not conflict with the plaintiff's RFC).

As for Dr. Allen, the ALJ found Dr. Allen's opinion not persuasive because it lacked supporting medical evidence. AR 38-39. The new evidence Plaintiff submitted to the Appeals Council shows that Dr. Allen examined Plaintiff on one occasion for the purpose of completing Plaintiff's SSI application. *See* ECF 20-2, at 414. The only limitations included in Dr. Allen's treatment notes are that Plaintiff has had a history of irritable bowel syndrome, had a mildly inflamed scalp, and that she walks with a left ankle eversion, but that Plaintiff can use her ankle brace to prevent the ankle eversion. *Id.* at 414-16. Dr. Allen's other findings were unremarkable. Dr. Allen stated that Plaintiff appeared in "no distress" and was "alert," "conversive," and "cooperative." *Id.* at 416. Dr. Allen noted that Plaintiff's straight leg test result was negative, that she had no leg edema, that her heart was regular and lungs were clear, and that she had no masses on her neck. *Id.* Even considering this new evidence, substantial evidence still supports

PAGE 15 – OPINION AND ORDER

the ALJ's conclusion that Dr. Allen's opinion lacked supporting medical evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (stating that under 20 C.F.R. § 416.920c, ALJs may discount a medical opinion based on a lack of supporting evidence or inconsistency with the record). Thus, because Plaintiff's new evidence does not undermine the substantial evidence supporting the ALJ's conclusion, any error in failing to develop the record was harmless.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 28th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
